IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN CARVETH, | No. C 08-03314 SI |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTIONS TO REMAND, TO STRIKE, AND FOR PAYMENT OF FEES AND COSTS** |
| v. | |
| ALLIS-CHALMERS CORPORATION PRODUCT LIABILITY TRUST, *et al.*, | |
| Defendants. | |

Plaintiff's motions are set for hearing on October 31, 2008. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court DENIES the motions.

**BACKGROUND**

On May 29, 2008, plaintiff Norman Carveth filed a complaint in San Francisco Superior Court. He alleged that numerous defendants, including United Technology Corporation ("UTC") were responsible for exposing him to asbestos, which caused him to develop asbestosis and asbestos-related pleural disease. Plaintiff identified thirteen time periods during which he was allegedly exposed to asbestos, eight of them while he worked as an aircraft mechanic on a U.S. Navy aircraft carrier. *See* Def. Notice of Removal, at ex. A (Plaintiff's Complaint for Personal Injury-Asbestos). Pratt & Whitney, a subsidiary of UTC, manufactured aircraft engines through which plaintiff was allegedly exposed to asbestos. *Id.*, at 2. Plaintiff brought claims for negligence, strict liability, false representation, premises owner/contractor liability, concert of action, and fraud. *Id.* at ex A.

1   On July 9, 2008, defendant UTC removed the case to federal court pursuant to the federal officer 2 statute, 28 U.S.C. § 1442(a). Now before the Court are plaintiff's motions to remand this case to state 3 court, to strike the declarations of Allan J. Shiffler and William P. Ringo, and for costs and attorney's 4 fees. Alternatively, plaintiff seeks to sever the action against defendant UTC and to remand the 5 remainder of the case to San Francisco County Superior Court.

## LEGAL STANDARD

8   A motion to remand is the proper procedure for challenging an opposing party's removal. 9 Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in 10 removal procedure. *See* 28 U.S.C. § 1447(c). The court may remand *sua sponte* or upon the motion of 11 a party. A defendant who invokes the federal court's removal jurisdiction has the burden of establishing 12 federal jurisdiction. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988) (citing 13 *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

14  In addition to the more common federal question and diversity grounds for removal, pursuant 15 to 28 U.S.C. § 1442(a), "[f]ederal officers, and their agents, may remove cases based on acts performed 16 under color of their federal office if they assert a colorable federal defense." *Durham v. Lockheed* 17 *Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citing 28 U.S.C. § 1442(a); *Mesa v. California*, 489 18 U.S. 121, 129 (1989)). "A party seeking removal under section 1442 must demonstrate that (a) it is a 19 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant 20 to a federal officer's directions, and plaintiff's claims, and (c) it can assert a 'colorable federal defense.'" 21 *Id.* (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

22  Unlike the general removal statutes, which "are to be strictly construed, and any doubts as to the 23 right of removal must be resolved in favor of remanding to state court," *id.* at 1252 (citation omitted), 24 "the Supreme Court has mandated a generous interpretation of the federal officer removal statute," *id.* 25 (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). There is, according to the Ninth Circuit, "a clear 26 command from both Congress and the Supreme Court that when federal officers and their agents are 27 seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id.* Also unlike 28 the general removal statues, under section 1442, not all defendants need concede to removal. *See Eli*

2

*Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir.1981) ("Thus, § 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants must join in the removal petition."). One defendant in a multi-defendant case can unilaterally remove the entire case to federal court if it meets the requirements of section 1442. *See Eli Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981).

## DISCUSSION

Plaintiff argues that defendant UTC's removal was substantively deficient because UTC has not established that it meets the requirements of § 1442(a).

## I.  Evidentiary objection

In opposing plaintiff's motion for remand, UTC offers evidence purporting to show why this Court has federal officer jurisdiction. Plaintiff moves to strike the declarations of Allan J. Shiffler and William P. Ringo offered in support of defendant's opposition to removal. Plaintiff objects that the Shiffler declaration is hearsay and is not based on personal knowledge. According to plaintiff, Shiffler's statements that the U.S. military controlled warnings and products manuals are hearsay. *See* Decl. of Allan J. Shiffler in Supp. of Def. Notice of Removal ("Shiffler Decl.), ¶ 10. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Shiffler's statements are not hearsay because he is testifying about the U.S. military's control over these documents, not their content.[1] In addition, Shiffler lays foundation that he had personal knowledge as to the testimony in his declaration. *See id*, ¶ 4 ("I joined Pratt & Whitney . . . in 1966 and was an engineer within the Engineering and Customer Technical Service Groups during my career at Pratt & Whitney. I retired from Pratt & Whitney in 2003."); ¶ 8 ("United States Military engineers and inspectors were personally present at Pratt & Whitney facilities to oversee, inspect, and approve the work performed by Pratt & Whitney engineers and other personnel . . . I personally interacted with these United States Military

---

[1] Plaintiff relies on *Green v. A.W. Chesterton Co.* in support of his motion to strike the Shiffler declaration. 366 F. Supp. 2d 149, 157 (D. Me. 2005). *Green* is inapposite because the affiant in that case testified as to the content of regulations and specifications.

3

representatives on a regular basis."). Thus, Shiffler's testimony on these matters is based on his personal knowledge and is therefore admissible. *See* Fed. R. Evid. 602. The majority of Shiffler's statements in his declaration are based on his personal knowledge. To the extent that some statements in his declaration are hearsay, the Court does not rely on those statements to decide this motion.

Plaintiff also objects that Ringo's conclusion about the U.S. military's knowledge of the potential health hazards of working with or around asbestos-containing materials is not based on personal knowledge. Ringo's resume lays foundation that he could be offered as an expert in industrial hygiene. *See* Decl. of William P. Ringo in Supp. of Def. Notice of Removal, ex. 1. As an expert, Ringo would be permitted to offer opinion evidence. *See* Fed. R. Evid. 702. To the extent Ringo offers evidence that is beyond his personal knowledge and not properly the subject of expert testimony, the Court does not rely on that evidence in this order.

Accordingly, the Court DENIES plaintiff's motion to strike.

**II.     Removal is Proper Because UTC has Satisfied the *Mesa* Factors**

In order to obtain removal under § 1442(a)(1), UTC must 1) demonstrate that it is a person within the meaning of the statute, 2) demonstrate that it acted under the direction of a federal officer, 3) demonstrate a causal nexus between plaintiff's claims and acts it performed under color of federal office, and 4) raise a colorable federal defense to plaintiff's claims. *Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989).

**A.     UTC is a person within the meaning of the statute**

UTC must demonstrate that it qualifies as a person within the meaning of the statute in order to seek removal pursuant to it. A "purely legal person such as a corporation could be engaged in activities that amount to the implementation of a federal policy under the direction of a government officer such that state court suits against those corporations could disrupt the execution of federal law." *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal., 1992) (citation omitted). UTC is a corporation and is therefore a person within the meaning of 28 U.S.C. § 1442(a)(1). *See id.*

### B.    UTC acted under the direction of a federal officer

UTC must also show that its actions were sufficiently controlled by a federal officer that UTC's liability arising from such actions needs to be adjudicated in federal court. If UTC "establishes only that the relevant acts occurred under the general auspices of a federal officer, such as being a participant in a regulated industry, they are not entitled to § 1442(a)(1) removal." *Id.* (citation omitted). Instead, UTC must show that the U.S. military had "direct and detailed control" over it. *Id.* In *Fung*, direct and detailed control was shown where the federal government contracted with the defendant to build submarines, monitored defendant's performance, ensured complete conformity by defendant with design specifications, and "required the defendant to construct and repair the vessels in accordance with the applicable and approved specifications incorporated into the contracts." *Id.* at 572-73.

UTC has provided sufficient evidence to demonstrate that the U.S. military had direct and detailed control over UTC's ability to place asbestos warnings on the aircraft engines they sold to the U.S. military. Pratt & Whitney is an unincorporated division of UTC that designs and manufactures aircraft engines for U.S. military aircraft. *See* Shiffler Decl., ¶ 1, 2. Pratt & Whitney performed its work under the immediate supervision of the United States military. *See id.*, ¶ 7. No aspect of the development, manufacture, and testing of the engines intended for use by the U.S. military escaped the military's close control. *See id.* U.S. military engineers and inspectors were personally present at Pratt & Whitney facilities to oversee, inspect and approve work performed by Pratt & Whitney engineers, including changes to engine design or specifications on all aircraft engines intended for use by the military. *See id.*, ¶ 8. The military had on-site inspectors who were responsible for oversight and approval of aircraft engines. *See id.*, ¶ 9. This level of control also applied to written materials that accompanied the aircraft engines. *See id.*, ¶ 10.

Plaintiff offers no evidence to contradict Shiffler's account. Instead, he argues that UTC has not met its burden because it has not provided evidence of the "contractual or regulatory language supporting their position." Pl. Mot. to Remand, at 4. Plaintiff relies on *Hilbert v. McDonnell Douglas Corp.* for his contention that UTC must offer proof of the precise specifications ordered by the government. 529 F. Supp. 2d 187 (D. Mass. 2008). In *Hilbert*, the court found that the defendant's evidence was deficient because an affiant's knowledge was limited to the Air Force while plaintiff's

claim arose from his tenure as an aircraft mechanic in the Navy. *Id.* at 201. In this case, Shiffler's testimony is based on his thirty-seven-year career as an engineer at Pratt & Whitney. In *Hilbert*, affiants' statements were also deficient because they were speculative as to whether warnings would have been rejected by the military. *Id.* Unlike the defendant in *Hilbert*, UTC has removed a design defect claim in addition to a failure to warn claim.

Other courts have held that there was direct and detailed control over military contractors in similar circumstances. *See, e.g.*, *Redman v. A.W. Chesterton Co.*, No. 08-3013, 2008 WL 4447729, at *4 (N.D. Cal., Sept. 30, 2008) (requisite control found over contractors in marine distilling plants manufactured for sale to the United States Navy); *Oberstar v. CBS Corp.*, 2008 U.S. Dist. LEXIS 14023, at *12 (C.D. Cal., Feb. 11, 2008) (requisite control found over contractors who manufactured equipment used on Navy ships). The Court finds that the Shiffler declaration is sufficient to meet UTC's burden of demonstrating direct and detailed control at this stage in the proceedings.

### C. Causal nexus

UTC must show that there is a causal nexus between UTC's acts under color of federal office and plaintiff's claims. Plaintiff's claims arise, in part, from plaintiff's work as an aircraft mechanic in the U.S. Navy from 1943-1947. As explained above, UTC has provided sufficient evidence that it acted under the direct and detailed control of the U.S. military when it manufactured aircraft engines for the military. Therefore, there is a sufficient causal nexus between UTC's actions pursuant to military control and plaintiff's claims.

### D. UTC raises a colorable federal defense to plaintiff's claims

Finally, UTC must show that it has a colorable federal defense. *See Mesa*, 489 U.S. at 128. Pursuant to the *Durham* policy favoring removal for federal officers, a defendant does not need to show a valid or likely successful federal defense, but merely a colorable one.[2] *Durham*, 445 F.3d at 1252. In this case, UTC invokes the military contractor defense, which shields military contractors from state

---

[2] Plaintiff's contention that *Durham* does not control this case because its holding was limited to the 30-day provisions of 28 U.S.C. § 1446 is without support.

6

tort law liability for defects in military equipment supplied to the United States when: "1) the United States approved reasonably precise specifications; 2) the equipment conformed to those specifications; and 3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 512 (1988).

Plaintiff argues first that there is no evidence that the U.S. military specified and required the use of asbestos materials. Under *Boyle*, however, UTC is required to show not that the equipment had the alleged defect, but that the government "approved reasonably precise specifications." As discussed above, UTC has made this showing with the Shiffler declaration.

Second, plaintiff argues that UTC has "provided no facts or information which would establish that the products in question are, in fact 'military equipment.'" Def. Mot. in supp. of Mot. for Remand, at 5. This argument is without merit. Shiffler testifies that Pratt & Whitney designed and manufactured aircraft engines for use in U.S. military aircraft. Shiffler Decl., ¶ 3. Plaintiff incorrectly asserts that UTC must establish that its equipment is not readily available to commercial users. Def. Reply in Supp. of Mot. for Remand, at 4. Plaintiff mischaracterizes *In re Hawaii Federal Asbestos Cases*, in which the Ninth Circuit, reviewing the district court's grant of military contractor immunity on summary judgment, found that the pipe insulation had "not been developed on the basis of involved judgments made by the military but in response to the broader needs and desires of the end-users in the private sector." 960 F.2d 806, 811 (9th Cir. 1992). Plaintiff offers no evidence that the aircraft engines manufactured by Pratt & Whitney were made in response to private-sector demand.

Plaintiff does not challenge UTC's contention that the Pratt & Whitney aircraft engines conformed to the specifications set by the military.

Finally, UTC must show that it warned the United States about any dangers in the use of the equipment that were known to UTC but not to the United States. UTC relies on the testimony of Ringo, who claims to have made an extensive review of the industrial hygiene literature relating to asbestos. Ringo Decl., ¶ 7. Ringo contends that the U.S. Navy has been aware of the hazards of working with or around asbestos-containing materials since the 1930s. *Id.*, ¶ 9. He also claims that "state-of-the-art scientific knowledge" in the 1950s through 1970s did not include information that an aircraft engine

7

mechanic would be at risk for asbestos-related health hazards. *Id.* ¶ 10. According to defendant's evidence, therefore, defendant could not have warned the Navy about the hazards of asbestos exposure from aircraft engines because there was no such knowledge at the time. Plaintiff does not claim that third *Boyle* requirement is not met and offers no evidence to the contrary.

UTC has shown that it is a person that acted under the direction of a federal officer, there is a causal nexus between its actions and plaintiff's claims, and it can assert a colorable federal defense. Therefore, federal officer jurisdiction is proper under § 1442(a)(1).

### III.  Costs and Severance

The Court DENIES plaintiff's request for costs and attorney's fees under the removal statute, 28 U.S.C. § 1447, as defendants' removal was sought under 28 U.S.C. § 1442(a).

The Court has discretion to sever UTC from the other defendants. *See* Fed. R. Civ. P. 42(b). The Court finds that, in light of the likelihood that the defendants will raise similar issues of causation and damages, severance is not warranted here. Accordingly, the Court DENIES plaintiff's motion to sever UTC.

### CONCLUSION

For the foregoing reasons and good cause shown, the Court hereby DENIES plaintiff's motion to remand, DENIES plaintiff's motion to strike, DENIES plaintiff's motion for costs and attorney's fees, and DENIES plaintiff's motion to sever.

**IT IS SO ORDERED.**

Dated: October 27, 2008

SUSAN ILLSTON
United States District Judge